Harold G. Cohen, Esq. (#271031971)
**DILWORTH PAXSON LLP**
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002
Telephone: (856) 675-1950
Email: hcohen@dilworthlaw.com

*Counsel to Citizens Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re:<br><br>SCHWAB ROAD BSD, LLC,<br><br>Debtor. | :<br>:<br>:<br>:<br>:<br>: | Chapter 11<br><br>Case No. 1:26-44485 (JMM) |

**MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d) OR TO DISMISS DEBTOR'S CHAPTER 11 CASE WITH PREJUDICE PURSUANT TO 11 U.S.C. § 1112(b)**

# TABLE OF CONTENTS

MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d) OR TO DISMISS DEBTOR'S CHAPTER 11 CASE WITH PREJUDICE PURSUANT TO 11 U.S.C. § 1112(b) .. 1

PRELIMINARY STATEMENT .......... 1

JURISDICTION AND VENUE .......... 4

THE PARTIES .......... 5

BACKGROUND .......... 5

*A. The Loan .......... 5*
*B. The Default and Foreclosure Proceedings .......... 6*
*C. The Bankruptcy .......... 9*

ARGUMENT .......... 15

*A. Citizens Should Be Granted Relief from Stay. .......... 17*
*B. The Debtor's Chapter 11 Case Should Be Dismissed. .......... 25*

*a. The Debtor Fails the Subjective Bad Faith Inquiry .......... 27*
*b. The Debtor Has No Reasonable Prospect of Reorganization. .......... 30*

*C. Cause Exists for Expedited Relief .......... 31*

CONCLUSION .......... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 51-53 W. 129th St. HDFC, Inc.*,
475 B.R. 391 (Bankr. S.D.N.Y. 2012) ........ 21

*In re AMR Corp.*,
490 B.R. 470 (S.D.N.Y. 2013) ........ 22

*In re C-TC 9th Ave. P'ship*,
113 F.3d 1304 (2d Cir. 1997) ........ 26, 28

*Citizens Bank, N.A. v. East Madison Street, LLC*,
Case No. C-24-CV-26-006140 (Baltimore City Cir. Ct. Sept. 10, 2026) ........ 25

*Citizens Bank, N.A. v. Schwab Road BSD, LLC*,
Case No. 2:26-cv-04453, (E.D. Pa. Aug. 4, 2026) ........ *passim*

*Com. Bank v. Mountain View Vill., Inc.*,
5 F.3d 34 (3d Cir. 1993) ........ 29

*In re Hago Pack LLC*,
Case No. 26-13058(AMC), ECF No. 63 (Oct. 19, 2026) ........ 25

*In re JJ Arch LLC*,
663 B.R. 258 (Bankr. S.D.N.Y. 2024), *motion for relief from judgment denied sub nom. In re JJ Arch LLC*, 676 B.R. 675 (Bankr. S.D.N.Y. 2025), *and aff'd sub nom. In re JJ Arch LLC*, No. 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026), *appeal dismissed* (Oct. 1, 2026) ........ 27

*In re Kaplan Breslaw Ash, LLC*,
264 B.R. 309 (Bankr. S.D.N.Y. 2001) ........ 20, 21, 22

*In re Loco Realty Corp.*,
2009 WL 2883050 (Bankr. S.D.N.Y. June 25, 2009) ........ 27

*In re M.J. & K. Co.*,
161 B.R. 586 (Bankr. S.D.N.Y. 1993) ........ 20

*In re Milstein*,
304 B.R. 208 (Bankr. E.D. Pa. 2004) ........ 19

*In re Moche*,
677 B.R. 592 (Bankr. S.D.N.Y. 2026) ........ 22

*In re Olick*,
221 B.R. 146 (Bankr. E.D. Pa. 1998) ........................................................................20

*In re Project Orange Associates, LLC*,
432 B.R. 89 (Bankr. S.D.N.Y. 2010) ........................................................................20

*Schwab Road BSD, LLC v. Hago Pack*,
Case No. 2025-22372 (Mont. Cty. Ct. Common Pleas July 28, 2025) ..................................30

*In re Sonnax Industries, Inc.*,
907 F.2d 1280, 1286 (2d Cir. 1990) ........................................................................20, 21

*In re SPAC Recovery Co.*,
676 B.R. 708 (Bankr. S.D.N.Y. 2026) ........................................................................26, 27

**Statutes**

11 U.S.C. § 362(a)(3) ........................................................................21

11 U.S.C. § 362(d) ........................................................................16, 18, 21

11 U.S.C. § 362(d)(1) ........................................................................21

11 U.S.C. §§ 362(d)(1)-(3) ........................................................................19

11 U.S.C. § 1112(b) ........................................................................16, 26

11 U.S.C. § 1161(1)(B) ........................................................................24

Movant Citizens Bank, N.A. ("**Citizens**" or "**Movant**"), by and through its undersigned counsel, respectfully moves: (a) pursuant to 11 U.S.C. § 362(d) for relief from the automatic stay arising upon the filing of this chapter 11 case by Schwab Road BSD, LLC ("**Schwab**" or the "**Debtor"**); and/or, in the alternative, (b) to dismiss the Debtor's Chapter 11 case with prejudice pursuant to 11 U.S.C. § 1112(b) (the "**Motion**"). Factual support for this Motion is set forth in the accompanying Certification of Joseph Gargiulo (and the exhibits attached thereto) and the Certification of Harold G. Cohen (and the exhibits attached thereto), respectively referenced in this Motion as the "**Gargiulo Cert.**" and the "**Cohen Cert**."

## PRELIMINARY STATEMENT

1. Schwab, a Pennsylvania limited liability company, is indebted to Citizens in an amount approaching $18 million on a loan secured by a first Mortgage on Debtor's four-tenant industrial warehouse property in Hatfield, PA and an Absolute Assignment of Leases and Rents. Citizens issued a notice of default and demand for payment because Schwab failed to remit each of the scheduled monthly payments of principal, interest, and escrow (each monthly payment being approximately $141,416), starting with the payment due for December 2025. Citizens filed suit in the United States District Court for the Eastern District of Pennsylvania to foreclose upon the Mortgage and for appointment of a receiver. Despite Schwab's opposition, the court entered orders, on September 23 and 24, 2026, appointing a receiver. Schwab file its Chapter 11 Petition, Schedules, and SOFA (collectively the "**Petition**") on September 25, admittedly to evade implementation of the receivership.

2. Sworn statements in the Petition: (a) if true, conclusively demonstrate that a successful reorganization is unattainable and that the Chapter 11 Petition was filed in bad faith; (b) if false, conclusively evidence the bad faith filing of the Petition:

- The only assets of the Debtor are the real property uncumbered by Citizens' Mortgage, an account receivable for historically unpaid rent due from a tenant at the Property, and money in an account at Citizens (that balance being funds collected from tenants at the Property).

- Debtor did not check the box to characterize this Chapter 11 as a single asset real estate case.

- Debtor's only business is ownership of the Property.

- Debtor has no income from the conduct of its business.

- Debtor has no leases or other executory contracts. [The Petition does not disclose its property management agreement with an affiliate.]

- Debtor does not hold any property belonging to another person. [The Petition does not disclose tenant security deposits.]

- No one maintains books and records of the Debtor.

- Debtor has no officers, directors, manager or anyone in control of the Debtor.

- Citizens is the only creditor scheduled by Debtor. [Debtor's manager signed a guaranty, thereby being a "co-debtor" to Citizens. That person is listed on the creditor matrix, in addition to Citizens.]

- Debtor is not a party to any litigation. [The Petition does not disclose the Citizens' foreclosure suit, Schwab's eviction action against a recalcitrant tenant and the Chapter 11 of that tenant.]

3. The Debtor has also failed to perform many critical, predicate duties.

- Debtor has not cured any of the deficiencies on the Deficiency Notice issued upon filing of the Petition other than payment of the filing fee.

- The Petition is an unauthorized, sham filing. Schwab's LLC Operating Agreement vests its named Manager (Yechiel R. Rivlin) – and only its Manager – with exclusive authority to manage, act for and control the Debtor. It does not contain any provision allowing that Manager to delegate his managerial duties to anyone else. Rivlin did not

sign the Petition; the Debtor's purported "CRO" did. *See* Operating Agreement, Ex. F to Gargiulo Cert., § 4.1.[1]

- Debtor has not obtained, nor sought, customary First Day Orders; *i.e.*, Debtor has not sought or obtained an Order authorizing engagement of counsel or authorizing Debtor's affiliate to manage the Property.

- Without an authorizing Order, Debtor's affiliate management company is notifying tenants to divert rent payments (Citizens' cash collateral) to a new non-DIP bank account.

- The Debtor has not obtained, nor sought, an Order authorizing use of "cash collateral" (rents from Property tenants, all of which are Citizens' cash collateral).

- Neither the Debtor nor its attorney appeared at the 341 Meeting scheduled for 1:00 p.m. on October 26, 2026.

- The Debtor's Continued 341 Meeting, held at 10:00 a.m. on November 2, 2026, was adjourned after a representative from the U.S. Trustee's Office concluded that the Debtor's purported "CRO" had no historic or current knowledge of the Debtor's operations and business affairs.

- The Debtor has not filed its first Monthly Operating Report ("MOR"); it was due on October 21, 2026.

- A tenant (Hago Pack) occupying 41% of the Property (and purportedly owing $3 million in rent arrearages) is in Chapter 11 and recently filed a Chapter 11 Plan with looming deadlines to establish the "cure amount" on its lease with Schwab and an anticipated motion to extend of the deadline to assume or reject its lease. The Debtor failed to seek or obtain an Order authorizing engagement of an attorney to represent the Debtor in that tenant's Chapter 11 and imminent deadlines.

4. This is manifestly a two-party dispute between the Debtor (a single-asset real estate entity) and its mortgage-secured lender. This Chapter 11 case serves no legitimate bankruptcy purpose. Stay relief and dismissal will enable a court-appointed professional receiver to independently manage the Property, obtain creditworthy/rent paying tenants, thereby

[1] In testimony at the Continued 341 Meeting, discussed *infra*, the "CRO" claimed that Rivlin, the Debtor's manager, signed two corporate resolutions authorizing his retention and authorizing him to file the Chapter 11 Petition. No resolutions have been produced or filed by the Debtor. Those resolutions would, in any event, be *ultra vires* as the Manager has no authority under the Operating Agreement to delegate his exclusive management responsibilities to anyone else.

positioning the Property for sale to satisfy the debt owed to Citizens with any excess proceeds inuring to Schwab.

5. Granting this Motion is urgently needed: (a) to prevent diversion of Citizens' cash collateral (rents derived from the Property); (b) to enable the receiver to perform its duties to manage the Property; and (c) to enable Citizens and/or the court-appointed receiver to immediately appear in the Hago Pack Chapter 11: (i) to protect Citizens' rights in the "cure amount" due under the lease between Hago Pack and Schwab (Schwab's landlord rights having been assigned to Citizens); (ii) to reply to the anticipated Hago Pack motion to extend the November 18, 2026 deadline to asssume or reject its lease; and (iii) to otherwise address the Hago Pack Chapter 11 Plan.

6. Because "cause" is plentiful, this Court should swiftly grant stay relief to Citizens or, in the alternative, dismiss the Debtor's bankruptcy with prejudice.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and the *Amended Standing Order of Reference from the United States District Court for the Eastern District of New York*, dated December 5, 2012. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The statutory bases for the relief requested herein are sections 362(d) and 1112(b) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**") and Local Bankruptcy Rule 9077-1(c).

## THE PARTIES

8. Movant Citizens Bank is a national bank organized under federal law with its main office in Providence, Rhode Island and a regional office at 101 JFK Parkway, Short Hills, New Jersey 07078. Citizens Bank is the successor by merger to Investors Bank ("**Lender**").

9. Schwab Road BSD, LLC ("**Schwab**" or the "**Debtor**") is a Pennsylvania limited liability company. Schwab maintains its principal office at 1274 49th Street, Suite 302, Brooklyn, New York 11219.

10. Yechiel R. Rivlin ("**Rivlin**"), the sole Manager of Schwab, resides at 5 Olive Court, Lakewood, New Jersey.

## BACKGROUND

### A. The Loan

11. On or about December 10, 2020, Investors Bank ("**Lender**") made a industrial warehouse mortgage loan to Schwab in the principal amount of $19,000,000.00 (the "**Loan**").

12. In connection with the Loan, Lender and Schwab executed a Loan Agreement dated December 10, 2020 (the "**Loan Agreement**"). A true and correct copy of the Loan Agreement is attached to the Gargiulo Cert. as **Exhibit A**.

13. In connection with the Loan, Schwab signed and delivered to Lender that certain Promissory Note dated as of December 10, 2020 (the "**Note**"). A true and correct copy of the Note is attached to the Gargiulo Cert. as **Exhibit B**.

14. As security for the Loan, Debtor signed and delivered to Lender Bank that certain Open End Mortgage and Security Agreement dated to be effective as of December 10, 2020 the

“**Mortgage**”), which encumbers certain real property, and improvements thereon, and certain personal property of Debtor with respect to the industrial warehouse rental premises located in the Township of Hatfield, County of Montgomery (all such real and personal property being referred to herein collectively as the “**Property**”). The Mortgage was recorded with the Recorder of Deeds of Montgomery County, Pennsylvania on March 5, 2021 as Instrument # 2021024923. A true and correct copy of the Mortgage, as recorded, is attached to the Gargiulo Cert as **Exhibit C.**

15. In connection with the Loan, Schwab signed and delivered to Lender that certain Absolute Assignment of Rents and Leases dated to be effective as of December 10, 2020 (the “**Assignment**”), by which, among other things, Schwab assigned to Lender the leases and rents derived from the mortgaged premises. The Assignment was recorded with the Recorder of Deeds of Montgomery County, Pennsylvania on March 5, 2021 as Instrument # 2021024924. A true and correct copy of the Assignment is attached to the Gargiulo Cert as **Exhibit D**.

16. The Loan Agreement, Note, Assignment, Mortgage, and all other documents further evidencing, securing, or executed in connection with the indebtedness under the Loan are collectively referenced herein as the “**Loan Documents**.”

17. On or about April 7, 2022, Citizens Bank merged with Lender. Accordingly, Citizens Bank, as successor by merger to Lender, is the current owner and holder of the Note, Mortgage and all other Loan Documents.

**B. The Default and Foreclosure Proceedings**

18. Debtor failed to make the scheduled payments of principal, interest, and real estate tax escrow for the months of December 2025 and every month thereafter; each non-

payment constitutes an Event of Default (as defined in the Loan Documents. Monthly payments of principal and interest (at the non-default rate) were $114,311.35. Monthly escrows for real estate taxes and insurance are $27,104.75.

19. Debtor further failed to maintain for 2025 a DSCR[2] of 1:1, which constitutes another Event of Default (as defined in the Loan Documents).

20. The outstanding principal balance on the Loan is $17,164,527.84. Interest has accrued on the Loan, and will continue to accrue, together with late charges and third-party expenses incurred by Citizens, including attorneys' fees and costs.

21. The Property is industrial warehouse rental property improved with a building of approximately 302,650 square feet, occupied by three tenants. A fourth tenant leases a parking area.

22. According to Debtor's September 1, 2026 rent roll, the Property is scheduled to produce rents from four tenants totaling $159,085.23 plus so-called CAM charges of $30,100.76, for total monthly revenue of $189,185.99, projected as an annual total of $2,270,231.88. That revenue must be professionally collected, administered, and managed to pay real estate taxes, insurance, maintenance, repairs, and other expenses relating to the Property and debt service to Citizens on the Loan.

23. Hago Pack, LLC ("**Tenant**" or "**Hago Pack**") is one of the tenants at the Property and occupies approximately 41% of the building on the Property. From the inception of its lease

[2] "DSCR" is a Debt Service Coverage Ratio, as measured for a "Testing Period" of a full calendar year, January 1 through December 31, by dividing the Debtor's net operating income by the debt service. **Exhibit A** to Gargiulo Cert., Loan Agreement § 3(h)(i).

in January, 2020, Hago Pack has disputed the rent and CAM charges that are due under its lease with Schwab.

24. On July 28, 2025, Defendant initiated an action in the Court of Common Pleas of Montgomery County against the Tenant, at Docket Number 2025-22372 (the "**Ejectment Action**"). In the Ejectment Action, Defendant sought to evict Tenant for its failure to pay more than $1.7 million (the equivalent of about 22 months) in rent and additional rent owed under the lease. In response, Tenant claimed that Defendant materially breached the lease, excusing Tenant's obligations to pay rent. On June 17, 2026, the Court of Common Pleas of Montgomery County issued a decision ordering Tenant to vacate the Property on or before June 30, 2026. Hago Pack continues to possess its leased space at the Property.

25. As a last-ditch effort to avoid eviction, Hago Pack filed a Petition for Relief under Chapter 11, Subchapter V of the Bankruptcy Code, on July 21, 2026, with the United States Bankruptcy Court for the Eastern District of Pennsylvania, at case number 26-13058-amc (the "**Hago Pack Bankruptcy**"). In its 1161(1)(b) Statement, Hago Pack disclosed that it had no financial statements and never filed any income tax return since its creation. A true and correct copy of Hago Pack's 1161(1)(b) Statement is attached to the Cohen Cert. as **Exhibit A**. Allowing a business to sign a long-term lease for 41% of the Property without obtaining financial statements and historical tax returns demonstrates Debtor's gross ineptitude as a property manager.

26. Based upon Schwab's defaults under the Loan Documents and inability to properly manage the Property, Citizens brought a foreclosure action on its Mortgage in the United States District Court for the Eastern District of Pennsylvania captioned at *Citizens Bank, N.A. v. Schwab Road BSD, LLC*, No. 2:26-cv-04453 (the "**Foreclosure Action**").

27. Citizens filed a motion in the Foreclosure Action seeking appointment of a receiver (the "**Receivership Motion**"). That Motion was filed on August 4, 2026 and opposed by Schwab. On each of September 23 and 24, 2026, an *Order Appointing Receiver* (the **"First Receivership Order**" and "**Second Receivership Order**," and together, the "**Receivership Orders**") was entered. *Citizens Bank, N.A. v. Schwab Road BSD, LLC*, Case No. 2:26-cv-04453-JMY, ECF Nos. 25, 27. True and correct copies of the Receivership Orders are attached to the Cohen Cert. as **Exhibits F and G**.

**C. The Bankruptcy**

28. On September 25, 2026 (the "**Petition Date**"), one day after the second Receivership Order was entered, Debtor filed its Chapter 11 Petition, Schedules and SOFA (collecting the "**Petition**") commencing this case.

29. The Debtor's Petition states that there are no unsecured creditors of the Debtor. ECF No. 1, p. 6.[3] The Debtor lists a single secured creditor: Citizens Bank. *Id.* at 12.

30. The Debtor has three assets: a checking account with Citizens Bank; a $3 million accounts receivable owed by Hago Pack (which accrued as a direct result of the Debtor's mismanagement of the Property); and the Property. *Id.* at 8-9.

31. The Petition states that this Chapter 11 Case is not a Single Asset Real Estate business. *Id.* at 2. However, the Property generates all or substantially all of the Debtor's gross income. The Debtor does not conduct any business other than the business of owining the Property and activities incident thereto.

---

[3] Despite listing no unsecured creditors and only one secured creditor in its schedules, the Debtor lists Reuven Rivlin as one of two total entries on its creditor matrix.

32. The Petition falsely states that the Debtor has no executory contracts and unexpired leases, despite the fact that the Debtor continues to have leases with all tenants of the Property, including Hago Pack. *Id.* at 14. The Petition also fails to disclose the agreeement with its affiliate to manage the Property.

33. The Petition falsely states that there are no legal actions in which the Debtor was involved in any capacity within 1 year before the Petition Date. ECF No. 1, p. 17. The Debtor was, immediately prior to the Petition Date, an active litigant in at least three different legal actions: the Ejectment Action, the Foreclosure Action, and the Hago Pack Bankruptcy.

34. The Debtor failed to name Rivlin, its Manager, in the Petition. The Petition does not name anyone as in control of the Debtor. *Id.* at 20.

35. The Petition is instead signed by a purported "CRO" of the Debtor. *Id.*

36. The Debtor's Operating Agreement does not authorize the retention of a "CRO". Operating Agreement § 4.1, attached as **Exhibit F** to the Gargiulo Cert.

37. Pursuant to the Debtor's Operating Agreement, only the Debtor's named Manager, Rivlin, had the authority to file a bankruptcy petition on its behalf. *Id.*

38. The Operating Agreement does not contain any provisions allowing the Manager to delegate his managerial duties. *Id.*

39. Pursuant to the Loan Agreement, no amendments to the Debtor's Operating Agreement may be made without prior notice to and consent of Citizens. Loan Agreement §§ 3(i), 3(x)(iii).

40. The Loan Agreement also obligates the Debtor to maintain its existence in compliance with all relevant laws. *Id.* § 3(j)(iv).

41. The Debtor's registered agent on April 28, 2021 and the Debtor has not retained a replacement registered agent.

42. As a Pennsylvania limited liability company, the Debtor is required to file annual reports with the Pennsylvania Secretary of State. The Debtor has not filed the required annual reports for several years.

43. On September 25, 2026, the Court issued a Notice of Deficient Filing (the "**Deficiency Notice**") identifying the following required items that Debtor failed to include with the Petition: the filing fee; a statement pursuant to E.D.N.Y. LBR 1073-2(b); a corporate resolution pursuant to E.D.N.Y. LBR 1074-1(a); a corporate ownership statement pursuant Fed. R. Bankr. P. 1007(a)(1); a corporate disclosure statement pursuant to Fed. R. Bankr. P. 1073-3; and the affidavit pursuant to E.D.N.Y. LBR 1007-4. ECF No. 2. The Deficiency Notice further required filing of the following documents within 14 days of the Petition Date: disclosure of compensation of attorney for Debtor pursuant to 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b); and a list of equity security holders and addresses. *Id.*

44. As of the date of this Motion, only the filing fee has been paid. The other items noted in the Deficiency Notice, which were due by either September 25, 2026 or October 9, 2026, have not been filed.

45. The Debtor has not filed its first Monthly Operating Report, for the stub month September 2026, which was due October 21, 2026.

46. Debtor has not sought consent from Citizens, or a court order, allowing use of "cash collateral." Cash collateral includes all rents and other amounts payable by tenants of the Property and Debtor's accounts receivable (which includes the $3 million apparently owed by Hago Pack).

47. The Debtor has filed no First-Day Motions in its bankruptcy case.

48. The Debtor has not filed an application to retain its affiliate ABS as its property manager.

49. The Debtor has not filed an application to retain counsel to represent it in the Hago Pack bankruptcy.

50. The Debtor has not filed an application to retain counsel in this Case.

51. The Debtor has not sought any court approval to retain a registered agent.

52. Neither the Debtor nor its counsel appeared at the 341 Meeting scheduled for 1:00 p.m. on October 26, 2026.

53. On or about October 20, 2026, ABS (purportedly acting on behalf of the Debtor) sent Hago Pack new payment instructions. Those instructions direct Hago Pack to remit all rent payments to an account at Dime Community Bank in the name of "Schwab Road BSD, LLC." On information and belief, the Dime Community Bank account is not labeled "Debtor in Possession" in its account name. Attached as **Exhibit H** to the Cohen Cert. is an email from Hago Pack's attorney with the ABS new payment instructions, including the wire/ACH information for the new Schwab bank account.

54. No account at Dime Community Bank was disclosed in the Debtor's bankruptcy petition.

55. ABS likely sent similar instructions to other Property tenants.

56. On information and belief, the Dime Community Bank account was opened after the Petition was filed. On information and belief, the Dime Community Bank account is not labeled "Debtor in Possession" in its account name.

57. Prior to the recent ABS notice to Property tenants, all rents and other lease payments were remitted to a Schwab account at Citizens in accordance with provision in the Loan Agreement. That Loan Agreement provision states that non-default Loan interest will increase by 1% per annum (approximately $14,303.77 per month) if Debtor's operating account is moved away from Citizens. It is imprudent and inexcusable for the debtor to needlessly incur a charge of additional interest. Citizens is a bank on the US Trustee Region 2 list of approved depositories.

58. On November 2, 2026, the Debtor's Continued 341 Meeting was held. The Debtor was represented by its purported "CRO," Theodore Welz, and counsel. The 341 Meeting was ultimately adjourned after a representative from the Office of the U.S. Trustee concluded that Welz had no or current historic knowledge of the Debtor's operations and finances. Prior to adjournment, Welz's testimony produced a litany of disturbing revelations:

- The Debtor's Petition was a rushed, emergency filing for the admitted purpose of preventing the receiver from performing his duties;
- Welz has served as CRO "maybe ten, fifteen times" and previously signed petitions, schedules and SOFAs commencing, perhaps, twenty other Chapter 11 cases;

- Welz knew he was signing the Petition and associated schedules under penalty of perjury, but nonetheless reviewed them only "vaguely";
- Welz acknowledged that he knew, when signing the Petition, Schedules and SOFA under oath that much of the information was wrong;
- Welz did not review the Debtor's Operating Agreement, instead relying on secondhand representations from Debtor's counsel regarding its contents;
- Welz was unaware that the Operating Agreement vests exclusive control of the Debtor in its Manager, Yechiel Reuven Rivlin;[4]
- Welz was unaware that the Operating Agreement contains no provision that would allow Rivlin to delegate his managerial duties, including but not limited to filing a Chapter 11 petition;[5]
- Welz claims that Rivlin signed two corporate resolutions to authorize his retention and give him the authority to file the Petition, though no such resolutions have been produced or filed;
- Welz testified he was familiar with "cash collateral," from participation in more than ten prior bankruptcy proceedings, but had taken no steps to obtain court approval to use the Debtor's cash collateral;
- Welz has taken no steps to secure the Debtor's rental income;
- Welz has not opened any DIP account on behalf of the Debtor, and knows of no DIP accounts that have been opened on the Debtor's behalf;
- Welz did not know how many tenants are in the Property;

---

[4] *See* Operating Agreement, attached as **Exhibit F** to Gargiulo Cert., § 4.1 ("The Managers shall have complete and exclusive control over the management of the Company's business and affairs, and all powers and rights necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company that are permitted to be exercised by the members of a limited liability company under the laws of the State of New York."). Despite the reference to New York, Schwab is a Pennsylvania limited liability company.

- Welz did not know why no payments to affiliates or a managing agent were disclosed, and whether any such payments were actually made;
- Welz stated he had been unable to correct the Debtor's inaccurate filings and many procedural deficiencies due to illness, but was unaware of any reason preventing Rivlin from doing so;
- Welz acknowledged that the Debtor's New York address is, at most, little more than a mailbox ("It's like a small Staples.");
- Welz stated he trusted Debtor's counsel's representations that property insurance on the Property is active ("Charles said there's insurance.");
- When asked if he had actually reviewed property insurance documents to confirm insurance was active, Welz gave contradictory answers;
- Welz did not know if the Debtor has any unsecured creditors;
- Welz claims he has been "on top of" identifying unsecured creditors, but could not identify a single step he has taken to do so; and
- Welz claimed to be aware of the Chapter 11 filed by Hago Pack, but was unaware of any upcoming deadlines or pending items in that case.

## ARGUMENT

59. The Court should grant Citizens relief from stay for "cause" pursuant to Section 362(d) or, in the alternative, should dismiss the Debtor's bankruptcy case with prejudice pursuant to Section 1112(b) as a bad faith filing.

60. This case has not been filed for any legitimate bankruptcy purpose—such as reorganization or to maximize value for creditors; there are no creditors apart from Citizens.

---

[5] *See id.*

Instead, this Chapter 11 Case constitutes a classic two-party dispute between a single-asset real estate Debtor and its secured lender regarding the Debtor's inability to make the required payments under the Loan Agreement. It is a stopgap calculated to forestall performance by the Receiver appointed in the Foreclosure Action. Testimony from the Debtor's "CRO" confirms this underlying tactical purpose. The Debtor has taken no steps to move its own bankruptcy forward, nor has it shown any indication of changing its prepetition inept style of management.

61. Welz attributes the lack of honest information in the Petition, Schedules and SOFA to the emergent need to file the Chapter 11 quickly in order to prevent the Receiver from taking control of the Property. That is, at best, a disingenuous excuse. The Receivership Motion was filed on August 4 – alerting Schwab to the realistic possiblity that a Receiver would be appointed. Schwab easily could have begun assembling all accurate information for a good faith set of Chapter 11 pleadings. Instead, Schwab opted to ignore its own Operating Agreement governance provisions, illegally appoint a CRO to file this Chapter 11 and comfortably allow that CRO and counsel to file a Petition, Schedules and SOFA known to be false.

62. The Debtor continues to be mismanaged by ABS, an insider that the Debtor has not sought Court permission to retain.

63. Moreover, the Debtor's bankruptcy was filed by a purported "CRO" who had no authority to do so pursuant to its Operating Agreement.[6]

64. Critically, the Debtor has not sought Court permission to retain counsel in connection with the Hago Pack Bankruptcy or its own. The Hago Pack bankruptcy is proceeding,

---

[6] *See* Operating Agreement, attached as **Exhibit F** to Gargiulo Cert., § 4.1 (vesting exclusive authority and control over Debtor in Rivlin as the designated Manager). In the Continued 341 Meeting, Welz claimed Rivlin, as Manager, signed two corporate resolutions authorizing his retention and giving him authority to file the Petition. The Debtor

and Hago Pack has submitted a proposed plan of reorganization, which may have significant impact on both Debtor and Citizens. The Hago Pack Plan requires Schwab, Citizens or the Receiver to present a "cure amount" statement and all supporting documentation of lease defaults by **November 9, 2026**. That Plan seeks to deem all defaults as waived if not timely presented. The proposed Hago Pack plan also indicates that Hago Pack intends to file a motion to extend its time to assume or reject its lease with the Debtor on or before November 18. The Debtor has abandoned any participation in Hago Pack's bankruptcy proceeding and Citizens' – which stand to be significantly impacted by the decision of the Debtor's 41% tenant regarding the lease – cannot appear in the Hago Pack Chapter 11 without either dismissal of Schwab's bankruptcy or "stay relief."

65. The Debtor has failed to: fix the deficiencies in its own filing; observe the formalities of a bankruptcy proceeding; and to demonstrate any reasonable possibility of reorganization. For all of these reasons, Citizens should be granted relief from stay or, in the alternative, the Debtor's chapter 11 case should be dismissed with prejudice.

## A. Citizens Should Be Granted Relief from Stay.

### 1. Legal Standard

66. Citizens seeks relief from the Section 362 automatic stay to enable the Receiver appointed in the Foreclosure Action to perform it duties and to allow continuation of the Foreclosure Action.

67. Section 362(d) provides, in relevant part:

On request of a party in interest and after notice and a hearing, the court

---

has not produced or filed these resolutions. If true, however, the existence of these resolutions cannot delegate the managerial authority solely vested in Rivlin to another.

> shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) [. . .]
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
> A. the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> B. the debtor has commenced monthly payments that—
>
> i. may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> ii. are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

11 U.S.C. §§ 362(d)(1)-(3). Relief from the automatic stay for an action against property can therefore be granted for "cause" or, in the case of a single-asset real estate debtor, for failure to file a feasible plan of reorganization or to make payments to a secured creditor.

68. The decision to grant or deny relief from the automatic stay is within the sound discretion of the Bankruptcy Court, and is based upon the totality of the circumstances. *In re*

*Milstein*, 304 B.R. 208, 211 (Bankr. E.D. Pa. 2004); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001); *In re Olick*, 221 B.R. 146, 161 (Bankr. E.D. Pa. 1998). Thus, "[w]hen deciding whether to modify the automatic stay, the court must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." *In re M.J. & K. Co.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993) (quotations omitted). This analysis can, but does not always, involve consideration of the twelve factors enumerated by the Second Circuit in *In re Sonnax Industries, Inc.*:

> "(1) whether relief would result in a partial or complete resolution of the issues;
>
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;
>
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
>
> (6) whether the action primarily involves third parties;
>
> (7) whether litigation in another forum would prejudice the interests of other creditors;
>
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
>
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
>
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
>
> (11) whether the parties are ready for trial in the other proceeding; and
>
> (12) impact of the stay on the parties and the balance of harms."

907 F.2d 1280, 1286 (2d Cir. 1990); *see also In re Project Orange Associates, LLC*, 432 B.R. 89, 103-04 (Bankr. S.D.N.Y. 2010) (noting courts in the Second Circuit either analyze the

*Sonnax* factors or "engage in fact-intensive inquiries which appear to be loosely based on the *Sonnax* factors, mainly attempting to maintain the prepetition status quo ante between the parties").

**2. Stay Relief Is Warranted.**

69. If the Court declines to quickly dismiss this chapter 11 case, Citizens Bank is entitled to immedite relief from the automatic stay for cause under section 362(d)(1) to put the Receiver in place pursuant to the Receivership Order.

70. The automatic stay of section 362(a) halts implementation of the Receivership Order as an act to exercise control over property of the estate – namely the Property. *See* 11 U.S.C. § 362(a)(3).

71. Under Section 362(d)(1) of the Bankruptcy Code, a court shall grant relief from the automatic stay for cause, including the lack of adequate protection of an interest in property. *See* 11 U.S.C. § 362(d)(1). Schwab is not entitled to use Citizens' "cash collateral" and Schwab is not otherwise making adequate protection payments to Citizens. While Section 362(d)(1) only explicitly identifies a lack of adequate protection as cause for stay relief, there are other bases for a cause finding. *In re 51-53 W. 129th St. HDFC, Inc.*, 475 B.R. 391, 398 (Bankr. S.D.N.Y. 2012) (quoting 3 Collier on Bankruptcy ⁋ 362.07[3] (16th ed. Rev. 2011)).

72. Certain indicia of bad faith can provide a basis for granting relief from stay, including: a debtor's failure to pay its secured creditors; a debtor's failure to pay taxes; a debtor being a single asset real estate entity that generated no income and was the subject of a foreclosure action; and the existence of very few unsecured creditors. *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334-35 (Bankr. S.D.N.Y. 2001) (citing *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 761 (Bankr. S.D.N.Y. 1997)).

73. In *In re Kaplan Breslaw Ash, LLC*, the court found cause existed to grant the lender's motion for relief from stay because the debtor: had only one asset; had no employees; produced no income and had no discernible cash flow; had very few unsecured creditors; owned property that was subject to a prepetition foreclosure action as a result of mortgage arrearages; and filed for bankruptcy to stop the foreclosure action. *Id.* at 335-36. Based upon these facts, the court held that there was a lack of adequate protection for the lender and, accordingly, cause existed to grant the lender's motion for relief from stay. *Id.*

74. This (the Schwab) chapter 11 case has strikingly similar facts to those in *In re Kaplan Breslaw Ash, LLC*. The Debtor has only one asset, the Property. The Debtor owes Citizens $17,164,527.84 in principal and the aggregate amount approaching $18 million, with interest and expenses continuing to accrue. Debtor is making no adequate protection payments. The Debtor claims the Property is valued at $20 million in its Schedule A/B. Even if that unsupported value is accepted, Citizens is entitled to preservation of the arithmetic "equity cushion" as it is rapidly eroding as interest and expense continue to accrue. *See In re AMR Corp.*, 490 B.R. 470, 478 (S.D.N.Y. 2013) (citing authority recognizing that equity cushion can be sufficient to provide adequate protection, *if* said equity cushion is large enough to ensure full debt recovery at completion of case) (citing *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994) ("An equity cushion, therefore, provides adequate protection if it is sufficiently large to ensure that the secured creditor will be able to recover its entire debt from the security at the completion of the case."); *In re Moche*, 677 B.R. 592, 614 (Bankr. S.D.N.Y. 2026) (same). The Debtor has no employees, no one maintaining books and records, no one in contol, and no one authorized to manage the Property. The Debtor's purported "CRO" has taken no steps to secure the Debtor's rental income, and testified that he did not know how many tenants were in the Property. The Debtor's SOFA states that Detobr's business produces no income and has no

discernable cash flow.[7] The Property is subject to the Foreclosure Action, which was initiated pre-Petition. This Chapter 11 case was filed to stop the Foreclosure Action and, more specifically, to stop implementation of the Receivership Order: the Petition was filed on the day after the second Receivership Order was entered.

75. The Debtor's bankruptcy petition was also signed by a purported "CRO" – a position with no authority to file a bankruptcy pursuant to the Debtor's Operating Agreement. Operating Agreement, § 4.1 (vesting "complete and exclusive control over the management of the Company's business and affairs" in the designated Manager of the Debtor and providing no mechanism for the delegation of that control).[8]

76. The Debtor's longstanding history of mismanagement of the Property further evidences "cause" to justify relief from the automatic stay.

77. The Debtor proved itself to be completely incapable of managing the Property; it failed to assure that its tenants, including Hago Pack, paid their full lease obligations. From the inception of the lease between the Debtor and Hago Pack, Hago Pack has disputed the rent and CAM charges that were due under the lease. Rather than timely dealing with Hago Pack's inexcusable conduct to ensure that the Loan Obligations to Citizens were being met, the Debtor sat on its hands for 5 years before filing the Eviction Action.

[7] In the Debtor's Statement of Financial Affairs, the Debtor claimed, under oath, that it has no income and no executory contracts or leases. These sworn statements can only be true if they are an implicit concession that the Debtor has no interest in any of the leases or rental payments arising therefrom by virtue of its execution of an Assignment of Rents in connection with the Loan Agreement and/or the appointment of a receiver in the Foreclosure Action. If they are not true, the Debtor, its, "CRO," and its Managing Member have allowed these material misstatements to go uncorrected for more than five weeks. In either case, they indicate that Citizens is entitled to stay relief.

[8] At the Continued 341 Meeting, "CRO" Theodore Welz claimed Rivlin signed two corporate resolutions: one authorizing his retention, and one authorizing him to file the Debtor's Chapter 11 Petition. The Debtor has not produced or filed any such resolutions.

78. Hago Pack had fundamental economic issues which should have alerted the Debtor to its inability to make the agreed-upon rent payments. As part of the initial filings in the Hago Pack Bankruptcy Case, Hago Pack submitted the *Statement Pursuant to 11 U.S.C. § 1161(1)(B) regarding Small Business Debtor Documents* (the "**Hago Pack Statement**"). A true and correct copy of the Hago Pack Statement is attached as **Exhibit A** to the Cohen Cert. In the Hago Pack Statement, the managing member of Hago Pack declared under penalty of perjury that, as of July 27, 2026, Hago Pack: did not have a balance sheet, statement of operations, or cash-flow statement; and did not file an income tax return for any year of its operation. *See* Ex. A to Cohen Cert., ¶¶ 5-6. Debtor, as the lessor of the Property, allowed Hago Pack to rent 41% of the space in the Property despite Hago Pack's failure to present any evidence of economic viability.

79. The Debtor tolerated Hago Pack's failure to properly pay rent and CAM charges set forth in the lease for over 5 years before taking action. Debtor allowed more than $2 million dollars of rent and CAM charges to accrue before filing the Eviction Action. Debtor's conduct epitomizes gross mismanagement.[9]

80. The Debtor has similarly failed to protect its interest (a $3 million account receivable and the tenant's going forward tenancy) in the Hago Pack bankruptcy action. Schwab neglected to file any application to retain counsel to appear in that proceeding. This decision is especially notable since the proposed plan of reorganization filed by Hago Pack on October 19, 2026 provides for payment of reduced rent to the Debtor of only $61,000.00 per month (equal to the 2020 1st year rent under the lease, excluding annual increases and CAM charges) and

[9] The "CRO"'s management to date appears no better. At the Continued 341 Meeting, "CRO" Welz testified that he did not know how many tenants occupied the Property.

reserves the right to assume or reject the lease at a later date. *In re Hago Pack LLC*, Case No. 26-13058(AMC), ECF No. 63 (Oct. 19, 2026).

81. The Debtor does not self-manage the Property. Debtor utilizes ABS, an entity affiliated with, and controlled by, Rivlin, to manage the Property for a fee. Debtor pays management fees to ABS, thereby diverting rents that could be used to pay its Loan Obligations.

82. The Debtor has failed to fix the deficiencies in its bankruptcy petition, to file its schedules, to file its monthly operating report for the stub month of September 2026, and to file any application to retain professionals – including its own bankruptcy counsel. Its failure to observe the formalities of the bankruptcy process and to submit critical First-Day Motions underscore that the Debtor, a single-asset real estate entity that is not currently paying secured creditor Citizens, has no reasonable possibility of reorganization.

83. Moreover, Rivlin's management style is not unique to the Property. He is also the LLC manager of East Madison Street LLC ("**East Madison**"), the owner of a multi-tenant industrial warehouse rental property in Baltimore, Maryland (the "**East Madison Property**"). East Madison owes Citizens approximately $4,657,350.63 on a loan secured by a first mortgage on the East Madison Property. The loan matured on April 1, 2026 and has not been paid. The East Madison Property is also managed by ABS. While rents and CAM charges are being collected from the tenants of the East Madison Property, no payments are being remitted to Citizens Bank. Citizens Bank paid the most recent real estate taxes because of an escrow shortage. The East Madison Property is the subject of a civil action seeking the appointment of a receiver in Maryland state court. Verified Petition to Appoint a Receiver, *Citizens Bank, N.A. v. East Madison Street, LLC*, Case No. C-24-CV-26-006140 (Baltimore City Cir. Ct. Sept. 10, 2026).

84. Rivlin, as Manager of the Schwab Property and the East Madison Property, has a management style that repudiates the rights of Citizens as mortgagee of both properties. Rents and CAM charges are being collected by his management company without any accounting to or payment of any obligations owed to Citizens Bank. On this basis, Citizens sought, and secured, the appointment of the Receiver for the Property to halt Debtor's continued management ineptitude. Instead of complying with the Receivership Order, Debtor filed this go-nowhere bankruptcy. This perversion of the purpose of the automatic stay cannot be tolerated. Stay relief is necessary to prevent Debtor from continuing its mismanagement of the Property.

**B. The Debtor's Chapter 11 Case Should Be Dismissed.**

**1. Legal Standard**

85. Pursuant to Section 1112(b) of the Bankruptcy Code, "on request of a party in interest, and after notice and a hearing," a court may convert or dismiss a Chapter 11 bankruptcy case for "cause". *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) ("A bankruptcy court may dismiss a bad faith filing on an interested party's motion or *sua sponte*.").

86. "Though not enumerated in 11 U.S.C. § 1112(b), bad faith constitutes cause for dismissal." *In re SPAC Recovery Co.*, 676 B.R. 708, 716 (Bankr. S.D.N.Y. 2026) (quoting *In re 300 Washington Street LLC*, 528 B.R. 534, 550 (Bankr. E.D.N.Y. 2015)) (internal quotations omitted); *id*. ("Bankruptcy courts employ their equitable powers to dismiss a case filed in bad faith, as good faith is a well-accepted precondition to bankruptcy relief.").

87. In the Second Circuit, the "critical test" of bad faith focuses on the debtor's petition date and makes two inquiries:

> 1) whether "there was no reasonable likelihood that the debtor intended to reorganize" (the "subjective bad faith" prong); and
>
> 2) whether "there was no reasonable possibility that the debtor will emerge from bankruptcy" (the "objective futility" prong).

*In re JJ Arch LLC*, 663 B.R. 258, 281 (Bankr. S.D.N.Y. 2024), *motion for relief from judgment denied sub nom. In re JJ Arch LLC,* 676 B.R. 675 (Bankr. S.D.N.Y. 2025), *and aff'd sub nom. In re JJ Arch LLC*, No. 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026), *appeal dismissed* (Oct. 1, 2026) (citing *In re Hudson 888 Owner LLC*, 2024 WL 1145664, at *4 (Bankr. S.D.N.Y. Mar. 15, 2024); *Baker v. Latham Sparrowbush Assocs*. (*In re Cohoes Indus. Terminal, Inc*.), 931 F.2d 222, 227 (2d Cir. 1991)); *In re Loco Realty Corp*., 2009 WL 2883050, at *3 (Bankr. S.D.N.Y. June 25, 2009)). "Once a movant establishes both prongs, a rebuttable presumption of bad faith arises and the burden shifts to the debtor to establish good and sufficient reasons why the relief should not be granted." *In re SPAC Recovery Co*., 676 B.R. 708, 718 (Bankr. S.D.N.Y. 2026) (citing and quoting *In re Artisanal 2015, LLC,* No. 17-12319, 2017 WL 5125545, at *8 (Bankr. S.D.N.Y. Nov. 3, 2017)) (internal quotations omitted).

88. In evaluating the subjective and objective prongs of bad faith, courts employ a "totality of the circumstances" analysis, seeking to discern whether the debtor's filing evinces an intent to abuse the judicial process or allows the court to glean the intended purpose of the debtor's reorganization process. In re SPAC Recovery Co., 676 B.R. 708, 717 (Bankr. S.D.N.Y. 2026). Relevant factors to this assessment include whether:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

> (4) the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
>
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (6) the debtor has little or no cash flow;
>
> (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
>
> (8) the debtor has no employees.

*In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1310 (2d Cir. 1997). Consideration of each of these factors, as part of a totality of the circumstances analysis, underscores that the Debtor (Schwab) fails both prongs of this test.

**2. The Debtor's Bankruptcy Should Be Dismissed as a Bad Faith Filing.**

**a. <u>The Debtor Fails the Subjective Bad Faith Inquiry</u>**

89. The Debtor's actions on and around the petition date indicate that it did not intend to reorganize, failing the "subjective bad faith" prong of the test.

90. The Debtor's Chapter 11 Petition was not signed by anyone authorized to do so. It was signed by a purported "CRO." This CRO had absolultely no authority whatsover to sign and file Debtor's Chapter 11 Petition, Schedules and SOFA. The Debtor's Operating Agreement unequivocally states that all mangement authority is exclusively vested in one, and only one, person – Rivlin as the Manager named in Debtor's Operating Agreement, § 4.1. Initiating a Chapter 11 proceeding is an extraordinary act of an LLC and cannot be performed by anyone lacking authority granted by its members under the Operating Agreement.



#125910882v1

91. The Debtor's bankruptcy is, in essence, a two-party dispute between Citizens and the Debtor – a single-asset real estate entity.[10] Citizens, the Debtor's largest and only identified creditor, filed the Receivership Motion in the parties' pending Foreclosure Action in the Eastern District of Pennsylvania. *Citizens Bank, N.A. v. Schwab Road BSD, LLC*, Case No. 2:26-cv-04453, ECF No. 9 (E.D. Pa. Aug. 4, 2026). Following notice and a full hearing, the Receiver Motion was granted on September 23, 2026, by the Honorable John Milton Younge. Order, *Citizens Bank, N.A. v. Schwab Road BSD, LLC*, Case No. 2:26-cv-04453, ECF No. 25 (E.D. Pa. Sept. 23, 2026). Debtor filed its Petition in this Court before the "ink was dry" on he Receivership Order. ECF No. 1 (Bankr. E.D.N.Y. Sept. 25, 2026).

92. The Debtor's commencement of the instant bankruptcy proceeding within two days of the entry of the first Receivership Order and the day after entry of the second Receivership Order indicates that this Chapter 11 filing is not intended to result in reorganization, but to frustrate Citizens' efforts to obtain relief in the pending E.D. Pa. Foreclosure Action. Examination of the other factors only underscores this analysis.

93. The Debtor is a single-asset real estate entity. It has no income other than rental income, of which it disclosed only a $3 million receivable from 41% tenant Hago Pack, representing years of back rent.[11] It has not collected rental income from Hago Pack for more

---

[10] Despite owing only one asset, the Property, Debtor did not check the "Single Asset Real Estate" disclosure box on its Petition. Petition, ECF No. 1 ¶ 7 (Sept. 25, 2026).

[11] Property rights are determined by the state law of the state where the property is located. *Com. Bank v. Mountain View Vill., Inc.*, 5 F.3d 34, 37 (3d Cir. 1993) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). The Property is located in Pennsylvania. Pennsylvania, a title theory state, allows a mortgagee to demand payments of rents and provides that those rents become the mortgagee's property. *Id.* at 38-39. Citizens' Receiver Motion (and the subsequent Receiver Order), as *de facto* demands for payment of rents, removed the rents items from being "property of the estate," and consequently from the Debtor's income.

than two years.[12]

94. The Debtor's omission of its rental income from its tenants on its schedules is striking. If true, the Debtor's bankruptcy is patently infeasible. If false, it irrefutably shows the Debtor's bad faith. The Debtor has leases with each of those tenants; therefore, this wholesale omission is evidence of bad faith, warranting dismissal. Or, the omission is a conscious concession by the Debtor that all of its rights under the leases have been assigned to Citizens; leaving Debtor with no ability whatsoever to reorganize.

95. Notwithstanding the Debtor's statements, there are multiple tenants in the building, and on information and belief, those tenants are actively paying rent. The Debtor has instructed at least one of those tenants (Hago Pack) and likely all of its tenants to divert payment of its rents to a non-DIP account.

96. The Debtor has not filed its missing schedules, nor has it fixed the multiple other deficiencies in its petition. Deadlines to do so have come and gone.

97. The Debtor has not filed applications to retain counsel for its own bankruptcy or to appear in the Hago Pack bankruptcy, nor has it sought court permission to retain its property manager, ABS, or to pay any critical vendors.

98. Debtor has not sought an order allowing use of "cash collateral" (rents generated from tenants at the Property.

99. The Debtor has disclosed no non-insider unsecured creditors and only one secured creditor: Citizens. Official Form 204, ECF No. 1 (Sept. 25, 2026); Schedule D, ECF No. 1 (Sept.

---

[12] The Debtor's pleadings in the Ejectment Action indicate that the Debtor's tenant owed an amount equal to approximately twenty-two (22) months of rent at the time of filing. *Schwab Road BSD, LLC v. Hago Pack*, Case No.

25, 2026). Only Citizens and insider Reuven Rivlin are listed on Debtor's Creditor Matrix, and the size of Reuven Rivlin's claim is unknown. Creditor Matrix, ECF No. 1 (Sept. 25, 2026). Citizens' claim, however, is estimated at $17 million – and therefore likely to dwarf any unsecured creditors' claims, including Reuven Rivlin's. Rivlin's presence on the Creditor Matrix is likely due to his status as a guarantor of the Loan with Citizens.

100. The Debtor's sole asset, the Property, is currently the subject of Citizens' Foreclosure Action in which the Receivership Order has been entererd providing for a receiver to administer the Property.

**b. <u>The Debtor Has No Reasonable Prospect of Reorganization.</u>**

101. The Debtor also fails the "objective futility" prong as it has no reasonable possibility of reorganization.

102. Debtor's Petition acknowledges that it has no income. Without income, Debtor cannot pay expenses incurred during this Chapter 11. It cannot pay quarterly US Trustee fees. It cannot pay adequate assurance to Citizens.

103. Without anyone "in control" of the Debtor, there is no one to propose a plan of reorganization, negotiate leases, negotiate a sale of the Property, arrange for a refinance of the Citizens Loan, etc., etc.

104. The Debtor's longstanding history of mismanagement of the Property indicates that the possibility of reorganization is a remote, and highly unlikely, one. *See* ¶¶ 74-84, *supra*.

105. In the face of its nearly $18 million debt to secured creditor Citizens, and without

---

2025-22372 (Mont. Cty. Ct. Common Pleas July 28, 2025).

any other income, the Debtor has no reasonable prospects of proposing a confirmable plan of reorganization.

106. The Debtor therefore fails the "objective futility" prong of the dismissal test, and its bankruptcy proceeding should be dismissed.

**C. Cause Exists for Expedited Relief**

107. The pendency of the Hago Pack Bankruptcy with its looming deadlines, the continued mismanagement of the Debtor, and the diversion of rents all necessitate expedited relief.

108. The Hago Pack Bankruptcy continues forward and poses a danger of prejudicing Citizens' rights. Citizens must first obtain relief from this Court before appearing on its own behalf in that proceeding if it is to do so without risking liability for a violation of the automatic stay.

109. The continued mismanagement of the Debtor by Rivlin and his affiliate, ABS, are a persisting drain on the Debtor's resources.

110. The instructions to Hago Pack to remit payments to a new, non-DIP bank account is a source of not only concern, but also urgency. Property of the Debtor's estate (Citizens' cash collateral) is potentially being diverted.

**CONCLUSION**

For all of the foregoing reasons, Citizens Bank, N.A. respectfully requests the Court to quickly grant stay relief on an expedited basis and/or, in the alternative, dismiss this chapter 11 case with prejudice so that:

a. The Receiver can immediately begin to manage the Property, collect rents and CAM charges, pay Property related expenses and perform his duties pursuant to the *Order Appointing Receiver* entered in the Foreclosure Action;

b. Citizens and/or the Receiver can immediately appear in the Hago Pack Bankruptcy to protect and assert all claims and rights of Citizens and Schwab;

c. Citizens and/or the Receiver can appear in the Ejectment Action;

d. Citizens can continue the Foreclosure Action; and

e. Citizens can exercise and pursue any and all other rights and remedies arising from Schwab's default on the Loan.

Citizens reserves the right to seek sanctions against all appropriate persons and parties arising from and relating to the bad faith commencement of this Chapter 11 Case, including the filing of the Petition, associated Schedules, and Statement of Financial Affairs with knowingly false and inaccurate information contained therein.

Dated: November 4, 2026

DILWORTH PAXSON, LLP

/s/ Harold G. Cohen

Harold Cohen, Esquire
**DILWORTH PAXSON LLP**
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002
Telephone: (856) 675-1950
Email: hcohen@dilworthlaw.com

*Counsel to Citizens Bank, N.A.*